Evan D. Schwab (NV Bar No. 10984)
Email: evan@schwablawnv.com
**SCHWAB LAW FIRM PLLC**
7455 Arroyo Crossing Parkway, Suite 220
Las Vegas, Nevada 89113
T: 702-761-6438
F: 702-921-6443

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| DR. DANIEL NUZUM, an individual;<br><br>Plaintiff,<br><br>v.<br><br>EPIGENETIC LABS LLC d/b/a ORGANIXX, a Nevada Limited Liability Company; JONATHAN HUNSAKER, and individual; TERIANN TREVENEN an individual; JOHN DOES 1 – 10; ROE CORPORATIONS 1 – 10.<br><br>Defendant. | Case No.<br><br>**Complaint**<br><br>**Jury Trial Demanded**<br><br>(1) Trademark Infringement<br>(2) Invasion of the Right of Publicity or Appropriation of the Name and Likeness<br>(3) Injunctive Relief<br>(4) Declaratory Relief<br>(5) Breach of Contract<br>(6) Unjust Enrichment<br>(7) Conversion<br>(8) Accounting<br>(9) Piercing the Corporate Veil/Alter-Ego |

Plaintiff Dr. Daniel Nuzum ("Plaintiff"), by and through his attorneys of record Evan D. Schwab, Esq. of Schwab Law Firm PLLC ("SLF"), alleges and pleads for his Complaint against Defendants as follows:

### Parties

1. Plaintiff Dr. Daniel Nuzum ("Plaintiff") is and was at all times relevant an individual residing in Alda County, Idaho and conducting business in the County of Clark, State of Nevada and the United States.

2. Defendant Epigenetic Labs LLC d/b/a Organixx ("Defendant Organixx") is and was at all times relevant a Nevada Limited Liability conducting business in Clark County, Nevada and the United States.

- 1 -

3. Defendant Jonathan Hunsaker ("Defendant Hunsaker") is and was at all times relevant a resident of Oregon. Defendant Hunsaker is and was at all times relevant the owner and/or spokesperson for Defendant Organixx.

4. Defendant TeriAnn Trevenen ("Defendant Trevenen") is and was at all times relevant a resident of Texas. Defendant Trevenen is and was at all times relevant the owner and/or CEO of Defendant Organixx.

5. The true names or capacities, whether individual, corporate, association or otherwise, of Defendants, Does 1 through 10, and Roe Corporations I through 10, are unknown to Plaintiff, who, therefore, sues said Defendants by such fictitious names. Plaintiff is informed and believes and thereupon alleges that each of the said Defendants designed herein as Doe and Roe Corporation are responsible in some manner for the events and happenings referred to and caused damages proximately to Plaintiff as herein alleged, and that Plaintiff will ask leave of this Court to amend this Complaint to insert the true names and capacities of Does I through Does X and Roe Corporations I through Roe Corporations X, when the same have been ascertained and to join such Defendant in this action.

6. Whenever reference is made to any act of Defendants in this Complaint, such allegations shall be deemed to mean all named Defendants, or their officers, agents, managers, representatives, employees, heirs, assignees, customers and tenants, did or authorize such actions while actively engaged in the operation, management, direction or control of the affairs of Defendants and while acting within the course and scope of their duties.

**Jurisdiction and Venue**

7. Jurisdiction is proper in the federal court for (including but not limited to) the following reasons. 18 U.S.C. § 1332 provides for federal jurisdiction based upon diversity of citizenship where the amount in controversy exceeds seventy-five thousand dollars ($75,000) and Plaintiff and Defendants (collectively "Parties") are citizens of different states. Defendant Organixx is deemed to be a citizen of

- 2 -

the State of Nevada as Defendant Organixx is incorporated in the State of Nevada. Defendants Hunsaker and Trevenen reside in Texas. Plaintiff is deemed to be a resident of Ada County, Idaho as Plaintiff resides there.

8. Venue is proper in the District of Nevada pursuant to 28 U.S.C. § 1391 for (including but not limited to) the following reasons. As set forth below, Plaintiff and Defendants entered into Formulator Agreement ("Agreement") on or about May 11, 2016. Under the terms of the Agreement, the Agreement "shall be interpreted and enforced under the laws of the State of Nevada which are applicable to contracts wholly executed and wholly performed in the said State." Defendants are in the business of selling nutritional supplements to individuals across the United States and in the State of Nevada. Clark County is the largest county in the State of Nevada, accounting for around ¾ of the population of the State of Nevada.[1] It stands to reason that the bulk of targeted marketing, sales and otherwise in Nevada by Defendants and "the substantial part of the events or omissions giving rise to the claim occurred…" would be in Clark County, Nevada.[2] Clark County, Nevada is where the United States District Court for the District of Nevada is comprised of one district and has a courthouse located in Las Vegas (Clark County), Nevada. As such, venue is proper in the United States District Court, District of Nevada and proceedings may take place in Clark County, Nevada at the Courthouse located at 333 S. Las Vegas Blvd., Las Vegas, Nevada 89101.

<strong>Demand for Jury Trial</strong>

9. Plaintiff hereby demands a jury trial as provided by Rule 38(a) of the Federal Rules of Civil Procedure.

[Remainder of Space Intentionally Left Blank]

---

[1] https://en.wikipedia.org/wiki/Clark_County,_Nevada

[2] 28 U.S.C. § 1391(b)(2).

**Factual Allegations**

10. Plaintiff is a nationally recognized physician and leader in the field of natural medicine and nutritional supplements, with a focus on the treatment of individuals suffering cancer, life threatening and terminal disease. Plaintiff graduated from Southern College of Naturopathy in 1998. In 1999, Plaintiff graduated from the North American College of Naprapathic Medicine after completing a two year internship and treating a patient base of 3,120. In 2004, Plaintiff graduated from the Central States College of Health Sciences with a dual Ph.D. in naturopathic medicine and mechanotherapy. Plaintiff did an apprenticeship with Dr. Robert McKinney and the Cherokee Indian Tribe from 2005 to 2012. In 2012, Plaintiff passed the AMMA National Board Certification Exam for naturopathic medicine and naprapathic medicine and achieved board certification. Plaintiff studied for eight years at Panam University and achieved the following degrees and honors: (a) Doctor of Manual Osteopathy; (b) Doctor of Oriental Medicine; (c) Ph.D. in indigenous medicine; (d) Ph.D. in monastic medicine; and (e) Ph.D. in Natural Medicine. Plaintiff has also served on the Counsel overseeing the Sacred Medical Order of the Knights of Hope from 2013 to 2017 and earned the following degrees: (a) Doctor of Monastic Medicine; (b) Ph.D. in Pastoral Counseling; (c) Masters in Theology; and (d) Ph.D. in education. In 2014, Plaintiff received his Tribal License in natural medicine, indigenous medicine and osteopathy. In 2016, Plaintiff graduated from National University of Medical Sciences in Madrid and earned a degree a doctorate of osteopathy. In 2016, Plaintiff passed the international licensing exam and completed a 1,000 hour internship. In February 2019, Plaintiff was honored by being appointed as Minister of Health of the Southern Cherokee Nation and Red Fire People.

11. On or about August 11, 2015, the United States Patent and Trademark Office granted Plaintiff a trademark for the name "Dr. Nuzum" ("Trademark"). A copy of this Trademark is attached as Exhibit 1 to the Complaint.

- 4 -

12. On or about May 11, 2016 Plaintiff and Defendant Organixx entered into a Formulator Agreement ("Agreement").  A copy of the Agreement, is attached as Exhibit 2 to the Complaint.  Under the terms of the Agreement, Plaintiff agreed to "formulate nutritional supplements and work with manufacturers to formulate nutritional supplements."  Plaintiff further agreed that "all formulas, ideas, inventions, improvements, developments and discoveries made, conceived or reduced to practice by Formulator, whether individual or in collaboration with others during the course of performance under this agreement are the sole property of the Company."  Plaintiff has no objection to Defendant keeping the formula/recipe for any supplements developed during the life of the Agreement.  The Agreement further provided that either Plaintiff or Defendant could terminate the Agreement in writing.  Under the Agreement, Plaintiff would receive ten-thousand dollars ($10,000) per month during the life of the Agreement for "formulator fees" plus two percent (2%) of the gross sales of any products developed by Plaintiff ("Royalty").  The Royalty survives the termination of the agreement whereas the "formulator fees" do not.  The Agreement provided that any disputes would be governed by the law of the State of Nevada.

13. During the life of the Agreement, the supplements formulated by Plaintiff were largely marketed to individuals suffering from cancer, terminal diseases and/or severe health issues. These individuals relied upon the use of quality ingredients, the purity and/or efficacy of the supplements provided to treat these conditions and to maintain dignity, peace, and comfort during their battle with such serious health issues.  Plaintiff became aware that the purity of ingredients, efficacy, formula and purity of the supplements were being altered by Defendants.  Plaintiff raised these issues with Defendants, but Defendants refused to remedy any of these issues.  During the life of the Agreement, Defendants were heavily using Plaintiff's name and likeness to market the supplements on (including but

not limited to): (a) Defendants' website[3]; (b) Facebook; (c) Youtube; (d) other social media; and (e) other media.

14. On or about January 30, 2019 ("Termination Date"), Plaintiff terminated the Agreement with Defendant. Even after the Termination Date, Defendants continued to and continue to date use Plaintiff's name and likeness to market the supplements on (including but not limited to): (a) Defendants' website[4]; (b) Facebook; (c) Youtube; (d) other social media; and (e) other media. Samples of Defendants' use of Plaintiff's name, likeness and image are attached as Exhibit 3.

15. On or about February 16, 2019, Plaintiff sent a written demand to Defendants[5] to "[r]emove Dr. Daniel Nuzum's likeness, image, videos, and name from your…website, Facebook, YouTube and all other media." The February 16, 2019 Cease and Desist Letter is attached as Exhibit 4 to the Complaint.

16. On or about April 3, 2019, non-party The Truth About Cancer ("TTAC") sent Plaintiff indicating that TTAC cannot do business with Plaintiff due and owing to the public perception that Plaintiff had continuing involvement with Defendant Organixx. A copy of the TTAC letter is attached as Exhibit 5 to the Complaint. TTAC (an independent observer) pointed out that Plaintiff is featured in "currently dozens (if not hundreds) of images, blog posts, and videos (posted on the Organixx.com website, Facebook, YouTube and other related websites)…" TTAC further noted that Plaintiff's photos were "being utilized by Organixx in their marketing efforts; they have an 'Ask the Doc" section of their website and also have dozens of 'Ask the Doc' videos on their YouTube channel."

---

[3] https://organixx.com/

[4] https://organixx.com/

[5] A written correspondence sent to Defendants' agents, attorneys, representatives or otherwise shall have the same effect as if sent to the Defendants themselves.

17. On or about June 6, 2019, Plaintiff sent an email correspondence Defendants reminding Defendants to stop using Plaintiff's trademark without Plaintiff's expressed permission and infringing upon the same.

18. Defendants continue to use Plaintiff's name, likeness, image and association in their marketing, website, social media and other materials. Sample screenshots of such usage are attached as Exhibit 6. Defendants are not esteemed in the health community and have caused a decisive split in public opinion as to Defendants. In example, those who support entities such as TTAC and are ideologically aligned with TTAC and similar organizations believe that Defendant Organixx creates products that (including but not limited to) fail to use proper ingredient quality, create supplements that are without efficacy, and/or jeopardize the treatment and health of individuals suffering from cancer, terminal and serious health matters.[6]

19. Independent inquiry and investigation has revealed that there are likely sums due and owing under the Agreement to Plaintiff that Defendants have not paid Plaintiff.

## First Cause of Action
## (Trademark Infringement)

20. Plaintiff repeats and re-allege each and every of the allegations set forth in paragraphs 1 through 19 of the Complaint as if fully set forth herein and further allege the following.

21. Plaintiff has a valid, protectable symbol or name described as "Dr. Nuzum" (the "Mark"). See Exhibit 1.

22. Plaintiff owns the Mark as a trademark.

23. Defendants have used the Mark in commerce in connection with the sale or advertising of goods or services without the consent of Plaintiff in a manner that

---
[6] See e.g. Exhibit 6 to Complaint.

is likely to cause confusion amongst ordinary consumers as to the source, sponsorship, affiliation or approval of the goods.

24. Plaintiff has been damaged by Defendants' infringement of Plaintiff's trademark rights in an amount in excess of seventy-five thousand dollars ($75,000).

25. Plaintiff's damages were proximately and legally caused by the conduct of Defendants.

26. Plaintiff has been required to obtain the services of an attorney to prosecute this action and is entitled to reasonable attorney's fees and costs.

## Second Cause of Action

**(Invasion of the Right of Publicity or Appropriation of the Name and Likeness)**

27. Plaintiff repeats and re-alleges each and every of the allegations set forth in paragraphs 1 through 26 of the Complaint as if fully set forth herein and further allege the following.

28. Defendants have used and are using the name, voice, signature, photograph or likeness of Plaintiff. This use has extended well beyond the termination of the Agreement.

29. Defendants' use was without the permission of the Plaintiff.

30. The misappropriation of Plaintiff's likeness or identity constitutes a personal injury.

31. Defendants have sought and obtained commercial value from the misappropriation of Plaintiff's name or likeness.

32. The commercial value of Plaintiff's name and likeness belongs to Plaintiff.

33. Plaintiff is entitled to take compensation for damages of not less than $750 and in excess of seventy-five thousand dollars ($75,000) for the commercial value taken by Defendants.

34. Plaintiff is entitled to injunctive relief and punitive damages.

35. The conduct of Defendants is the proximate and legal cause of Plaintiff's damages.

36. Plaintiff has been required to retain the services of an attorney to prosecute this action and is entitled to a reasonable award of attorney's fees and costs.

### Third Cause of Action

### (Injunctive Relief)

37. Plaintiff repeats and re-alleges each and every of the allegations set forth in paragraphs 1 through 36 of the Complaint as if fully set forth herein and further allege the following.

38. Plaintiff has a reasonable probability of success on the merits of the underlying claims.

39. Without injunctive relief, Plaintiff will suffer an irreparable harm for which compensatory damages are inadequate. In example, the continued use of Plaintiff's name and likeness by Defendants will cause Plaintiff severe economic harm that cannot truly be measured in the gravity thereof, loss of business and economic damages that a financial award cannot fully redress. The only feasible way to protect Plaintiff is to grant injunctive relief, stopping Defendants from the use of Plaintiff's name and likeness. Absent such relief, Plaintiff will not really be able to make a living, have a business and provide for himself and his family. Any award of damages would be illusory at best and sanction Defendant's temporary use of Plaintiff's likeness and name for profit at great cost to Plaintiff from which Plaintiff may truly never recover.

40. The interest of the public and Plaintiff is substantial in seeing the harm stopped. Likewise, Plaintiff would suffer immense hardships if the Court refused to take action in the form of injunctive relief.

41. The purpose of seeking the temporary restraining order, restraining order, injunction and permanent injunction is to preserve the status quo and/or to preserve a business or property.

42. Plaintiff will satisfy an appropriate bond as required by NRCP 65 and/or the federal equivalent.

43. As a result of Defendants' conduct, Plaintiff has suffered damages in an amount in excess of seventy-five thousand dollars ($75,000).
44. Plaintiff has been required to retain the services of an attorney to prosecute this action and is entitled to reasonable award of attorney's fees and costs.

## Fourth Cause of Action

### (Declaratory Relief)

45. Plaintiff repeats and re-alleges each and every of the allegations set forth in paragraphs 1 through 44 of the Complaint as if fully set forth herein and further allege the following.
46. Plaintiff is entitled to declaratory relief under (including but not limited to) NRS 30.040, because there is (including but not limited to) written contracts and/or contracts implied in fact, quasi contractors or otherwise between Plaintiff and Defendants pertaining to the Agreement, formulation of supplements, compensation and other matters related to the Agreement.
47. The questions of law to be determined incudes (but are not limited to): (a) whether Defendants breached the underlying contract(s) and violated the terms thereof; (b) whether Defendants had the right to use Plaintiff's name, likeness, and image following the termination of the Agreement; and (c) what is required as far as ongoing payments under the Agreement and whether those obligations have been met.
48. This remedy is appropriate, because (including but not limited to) "Any person interested under a deed, written contract or other writings constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, contract or franchise, may have determined any question or construction of validity arising under the instrument, statute, ordinance, contract

or franchise and obtain a declaration of rights, status or other legal relations thereunder."[7]

49. Plaintiff has been required to obtain the services of an attorney to prosecute this action and is entitled to a reasonable award of attorney's fees and costs.

### Fifth Cause of Action

### (Breach of Contract)

50. Plaintiff repeats and re-alleges each and every of the allegations set forth in paragraphs 1 through 49 of the Complaint as if fully set forth herein and further allege the following.

51. There existed a valid contract including offer, acceptance an consideration between Plaintiff and Defendants.

52. Defendants breached the contract or failed to render performance when it became due.

53. Defendants' breach or failure of performance was unexcused.

54. All conditions precedent to Defendants' duty to perform were fulfilled by Plaintiff or were excused.

55. Plaintiff was damaged in an amount in excess of seventy-five thousand dollars ($75,000) as a result of Defendants' conduct.

56. Defendants' conduct was the proximate and legal cause of Plaintiff's damages.

57. Plaintiff has been required to obtain the services of an attorney to prosecute this action and is entitled to a reasonable award of attorney's fees and costs.

### Sixth Cause of Action

### (Unjust Enrichment)

58. Plaintiff repeats and re-alleges each and every of the allegations set forth in paragraphs 1 through 57 of the Complaint as if fully set forth herein and further allege the following.

---

[7] NRS 30.040.

59. A benefit has been conferred upon Defendants of (including but not limited to): (a) formulations for supplements; (b) marketable supplements and the income therefrom; (c) the use of Plaintiff's image, likeness, and name; and (d) other tangible financial benefits.

60. Defendants accepted and retained the benefit under circumstances where it would be inequitable for Defendants to retain the benefit without payment of value for the same.

61. Pleading in the alternative, there was a lack or absence of an express or written contract.

62. As a result of the conduct of Defendants, Plaintiff has suffered damages in an amount in excess of seventy-five thousand dollars ($75,000).

63. The conduct of Defendants was the proximate and legal cause of Plaintiff's damages.

64. Plaintiff has been forced to retain the services of an attorney to prosecute this action are entitled to a reasonable award of attorney's fees and costs.

## Seventh Cause of Action

### (Conversion)

65. Plaintiff repeats and re-allege each and every of the allegations set forth in paragraphs 1 through 64 of the Complaint as if fully set forth herein and further allege the following.

66. Defendants made a distinct and intentional act of dominion which is wrongfully exerted over the property of Plaintiff. Plaintiff's property includes (but is not limited to) Plaintiff's name, image and likeness.

67. Defendants' actions were committed in denial of, or inconsistent with the rightful owner's use and enjoyment of the property.

68. Defendants' actions were committed in derogation, exclusion or defiance of the owner's rights or title.

69. Because of the conduct of Defendants, Plaintiff suffered damages in an amount in excess of seventy-five thousand dollars ($75,000).
70. Defendants' conduct was the proximate and legal cause of Plaintiffs' damages.
71. Plaintiff has been required to obtain the services of an attorney to prosecute this action and are entitled to a reasonable award of attorney's fees and costs.

### Eighth Cause of Action
### (Accounting)

72. Plaintiff repeats and re-alleges each and every of the allegations set forth in paragraphs 1 through 71 of the Complaint as if fully set forth herein and further allege the following.
73. Plaintiff is entitled to an accounting of Royalties and the underlying sales of supplements arising out of the Agreement and the prior and current relationship between the Parties.
74. Defendants owe Plaintiff a fiduciary duty.
75. Upon information and belief, and reasonable investigation to date, there are discrepancies between the Royalties paid and the overall Royalties owed.
76. Judicially ordered accounting is an appropriate remedy to help resolve this dispute and efforts to obtain a non-judicial accounting to date have been unsuccessful.
77. Plaintiff has been required to obtain the services of an attorney to prosecute this action and is entitled to a reasonable award of attorney's fees and costs.

### Ninth Cause of Action
### (Piercing the Corporate Veil/Alter-Ego)

78. Plaintiffs repeat and re-allege each and every of the allegations set forth in paragraphs 1 through 77 of the Complaint as if fully set forth herein and further allege the following.

79. Defendant Organixx is influenced and governed by Defendants Hunsaker and Trevenen and presumed to be an alter-ego of Defendants Hunsaker and Trevenen.[8]
80. There is such a unity of interest and ownership that Defendant Organixx, Defendant Hunsaker and/or Defendant Trevenen are inseparable from one another.[9]
81. The facts are such that adherence to the fiction of separate entities as between Defendant Organixx, Defendant Hunsaker and/or Defendant Trevenen would (under the circumstances) sanction a fraud or promote injustice.[10]
82. Defendant Organixx is undercapitalized.
83. Plaintiff should be permitted to proceed against Defendants Hunsaker and Trevenen with regard to any cause of action in the Complaint.

### Prayer for Relief

Wherefore, Plaintiff Dr. Daniel Nuzum pray for judgment against Defendants and requests the following relief as follows:

1. For an award of general damages in excess of $15,000.
2. For an award of special damages in excess of $15,000.
3. For consequential damages in excess of $15,000.
4. For incidental damages in amount in excess of $15,000.
5. For injunctive relief (permanent and temporary) and a restraining order (permanent and temporary).
6. For specific performance by Defendants.
7. For prejudgment interest.

---

[8] See e.g. *Frank McCleary Cattle Co. v. Sewell*, 73 Nev. 279, 317 P.2d 957 (Nev. 1957) (Overruled on other grounds).

[9] Id.

[10] See e.g. *Hunter Mining Laboratories, Inc. v. Management Assistance, Inc.*, 104 Nev. 568, 570-71, 763 P.2d 350, 352 (1988).

1  8. For reasonable attorney's fees and costs of suit incurred.

2  9. For other such relief as the Court deems just and proper under the circumstances.

3  Dated this 28th day of August 2019

4  Schwab Law Firm PLLC

5  *[signature]*

6  Evan D. Schwab (NV Bar No. 10984)
7  7455 Arroyo Crossing Parkway, Suite 220
   Las Vegas, Nevada 89113
   E: evan@schwablawnv.com
8  T: 702-761-6438
   F: 702-921-6443
9
   *Attorneys for Dr. Daniel Nuzum*
10



## Verification

State of Idaho      )
                    ) ss:
County of Ada       )

I, DR. DANIEL NUZUM, being first duly sworn, deposes and states that, I am the Plaintiff in the above referenced matter, I am a party in the above-entitled action; that I have read the foregoing *Complaint* and know the contents thereof; that the same is true of my own knowledge, except for those matters therein stated upon information and belief, and as to those matters, I believe them to be true.

Dated this 28th day of August 2019.

_____
Dr. Daniel Nuzum

Subscribed and sworn to before
me this 28th day of August 2019.

_____
Notary Public in and for said County and State.