# Exhibit 2

DocuSign Envelope ID: EBAA86EB-A285-4997-AFB9-84D0D73C25D1

# FORMULATOR AGREEMENT

This Formulator Agreement ("Agreement") is made and entered into as of this day of the 11th day of May, 2016 and between Epigenetic Labs LLC., a Nevada Limited Liability Company ("Company"), AND Dr. Daniel Nuzum ("Formulator"), with reference to the following recitals:

WHEREAS, Company and Formulator currently desire to enter into a business relationship, whereby Formulator performs certain services for Company, and

WHEREAS, Company has developed a substantial amount of confidential and proprietary information in connection with its business that would not otherwise be available to Formulator through any other source, all of which Company desires to protect and keep in the strictly confidential and secret.

NOW THEREFORE, in consideration of the mutual agreements and promises contained herein, and for other good and valuable consideration, and receipt and adequacy of which is hereby acknowledged, the parties here/to agree as follows:

1. **Services**

Formulator shall perform the following:

(a) Formulator shall formulate nutritional supplements and work with manufacturers to formulate nutritional supplements.
(b) The results and proceeds of Formulator's services hereunder shall be deemed a "work-made-for-hire" specifically ordered by Company. Formulator acknowledges and agrees that all formulas, ideas, inventions, improvements, developments and discoveries made, conceived or reduced to practice by Formulator, whether individually or in collaboration with others, during the course of performance under this Agreement, are the sole property of Company.
(c) The Formulator represents that she/he is free to enter into this Agreement and that this engagement does not violate the terms of any agreement between the Formulator and any third party. Further, the Formulator in rendering his or her duties shall not utilize any third party invention, discovery, development, innovation or trade secret in which she/he does not have a proprietary interest. During the term of this agreement, the Formulator shall devote as much of her/his productive time, energy and abilities to the performance of her/his duties hereunder as is necessary to perform the required duties in a timely, professional and productive manner as is specified by the Company. The Formulator is free to perform services for other parties while performing services for the Company.

2. **Effective Date**

This Agreement shall become effective as of the date first referenced above and shall continue in full force and effect until April 30, 2017, at which times both parties shall have the option to renew.



DocuSign Envelope ID: EBAA86EB-A285-4997-AFB9-84D0D73C25D1

### 3. Compensation to Formulator

As consideration for the performance of services to Company, Contract shall receive compensation as agreed upon by both parties. Under no circumstances shall the compensation be deemed as wages, but rather **non**employee compensation and/or royalties for the sale of products.  Compensation shall be calculated based on *Appendix A*.

### 4. Termination

Company may, in its sole and exclusive discretion, terminate this Agreement without written notice. Formulator may also terminate this Agreement without written notice to the Company. Upon termination, Formulator's entitlement compensation shall be calculated based on *Appendix A*.

### 5. Independent Contractor Status

This Agreement shall not constitute a hiring by either party. In that regard, it is expressly acknowledged, understood and agreed by Formulator and Company that Formulator shall be, and remain at all times, an independent contractor with respect to Company performance of the Services and not an employee of, or partner or joint venture with, Company. To that end, Formulator and Company further acknowledge, understands and agree that (a) Formulator shall be under the control of Company only as to the results of the performance of the Services: (b) Formulator shall retain sole and absolute discretion and judgment over the method, manner, and means of the performance of the Services: (c) Formulator will be solely responsible for maintaining Formulator's insurance coverage, including but not limited to, worker's compensation and public liability coverage; and (d) Formulator shall have no authority to act as an agent, or in any other capacity, for or on behalf of Company or to bind Company in any manner whatsoever.

### 6. Confidentiality Treatment of Information

Formulator covenants and agrees that Formulator shall not, at any time during or following the term of this Agreement, directly or indirectly, disclose, divulge, reveal, report, publish, transfer or use, for any purpose whatsoever, any Confidential and Proprietary Information Formulator will hold in strict confidence and in a fiduciary capacity. During the term of this Agreement, Formulator shall safeguard all Confidential and Proprietary Information in Formulator's possession or control to prevent its acquisition by unauthorized third parties. Formulator further agrees to return to Company immediately upon the termination of this Agreement all Confidential and Proprietary Information in Formulator's possession or control which is recorded or fixed in any medium whatsoever, including without limitation, printed, or typed materials, personal notes, reproductions, computer tapes, disks and programs, tape recordings and photographs.

### 7. Non-Competition

During the term of this Agreement, Formulator will not, either directly or indirectly, engage or participant in any business or activity that is in direct competition with the Company's business to the extent that such business or activity would significantly inhibit Formulator's ability to perform hereunder. Additionally, Formulator shall inform Company of any such business or activity prior to its commencement.



DocuSign Envelope ID: EBAA86EB-A285-4997-AFB9-84D0D73C25D1

**8. Non-Solicitation**

Either during the term of this agreement or for a period of one year following the termination of this agreement, Formulator will not, either directly or indirectly, solicit any customers or clients of the Company without express written authorization from the Company. Also, Formulator will not hire or solicit any employees of the Company during the term of this contract and for one year following the term of this contract.

**9. Non-Assignment**

The interests of the Formulator under this Agreement are not subject to the claims of his creditors and may not be voluntarily or involuntarily assigned, alienated or encumbered. Formulator may not assign, delegate or discharge his/her duties to any other persons or entities.

**10. Remedies**

If at any time the Formulator violates any of the covenants or agreements set forth in paragraphs 6, 7, 8 and 10, the Company shall have the right to terminate all of its obligations to make further payments under this Agreement. The Formulator acknowledges that the Company would be irreparably injured by a violation of paragraph 6, 7, 8 or 10 and agrees that the Company shall be entitled to an injunction restraining the Formulator from any actual or threatened breach of paragraph 6, 7, 8 or 10 or to any other appropriate equitable remedy without any bond or other security being required.

**11. Intellectual Property**

Formulator hereby assigns to Company all of Formulator's right, title and interest in and to all intellectual property, inventions, improvements, developments, products, trade secrets, discoveries, trade names and trademarks conceived, systems or other such data information of Company, or relating to the business of Company, which are created during the terms of this Agreement. Formulator, upon the written request of Company, and at the sole cost and expense of Company, will execute, acknowledge, deliver and file any and all documents necessary or useful to vest in Company all Formulator's right, title, and interest in and to all of such matters, all of which will constitute Trade Secrets of Company until such matters cease to be Trade Secrets by operation of law. All intellectual property involved and derived from the Program is the sole and exclusive property of Company.

**12. Entire Agreement**

This Agreement contain the entire understanding of the parties hereto with respect to the subject matter hereof and supersedes any and all previous or contemporaneous agreements concerning such subject matter, whether oral or written. Additionally, the parties hereto acknowledges, understands and agree that this Agreement may not be modified, amended or otherwise changed, in any manner, except by a writing executed by the parties hereto.

**13. Mediation/Arbitration/Attorney's Fees**

Any disputes arising under this Agreement shall be resolved first by good-faith mediation between the parties. If the dispute persists despite party attempts at mediation, the dispute shall be resolved by arbitration in Nevada in accordance with the rules of the American



DocuSign Envelope ID: EBAA86EB-A285-4997-AFB9-84D0D73C25D1

Arbitration Association in Nevada. Both parties shall be entitled to engage in all forms of discovery as permitted under Nevada. The prevailing party shall be entitled to recover the costs of arbitration unless otherwise determined by the arbitrator and shall be entitled to reasonable attorney's fees as determined by the arbitrator.

**14. Severability**

If any portion of this Agreement shall be determined to be illegal, invalid or unenforceable by a court or competent jurisdiction, the remaining portion of this Agreement shall nevertheless, remain in full force and effect, with any such illegal, invalid or unenforceable portion being deemed deleted.

**14. Governing Law**

This Agreement shall be interpreted and enforced under the laws of the State of Nevada which are applicable to contracts wholly executed and wholly performed in said State.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

Epigenetic Labs, LLC

By: _____
Ty Bollinger, Managing Member

By: _____
Jon Hunsaker, Managing Member

Formulator - Dr. Daniel Nuzum

By: _____



DocuSign Envelope ID: EBAA86EB-A285-4997-AFB9-84D0D73C25D1

# APPENDIX A

Formulator's Compensation shall be calculated as follows:

- **$10,000 per month** for "formulator fees"



### PLUS

- **2%** of **Gross Sales** of **Formulator's Products**
  - For purposes of this Agreement, **Gross Sales** are defined as gross receipts (less returns and advertising costs).
  - **"Formulator's products"** are defined as products which were conceived and formulated by Formulator.  As of the date of this Agreement, these products include 7M, 7M+, Turmeric 3D, Optimoxx, FulviMAX, the probiotic/enzyme combination, the hormone balancing product, and the Magi-Complex. Formulator will also be paid the same percentage for sales of future products conceived and formulated by Formulator and sold by Company.
  - This amount shall be calculated and paid within 45 days of the end of each calendar year.

### IN ADDITION:

- Formulator shall **not** be compensated for the sale of any Company products which are private labeled, affiliate promotions, or other products which were not formulated by Formulator. Formulator shall only be compensated for Formulator's Products, as defined above.
- **Upon termination** of this Agreement, Formulator shall no longer receive $10,000 per month, but Formulator shall receive **2% of Gross Sales of Formulator's Products**, as defined above, and shall be paid to Formulator in **perpetuity**.